**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAYUGA NATION,<br>256 Cayuga Street<br>Union Springs, New York 13160,<br><br>       *Plaintiff*,<br><br>   V.<br><br>THE UNITED STATES OF AMERICA;<br><br>U.S. DEPARTMENT OF THE<br>INTERIOR,<br>1849 C Street N.W.<br>Washington, D.C. 20240;<br><br>DAVID L. BERNHARDT,<br>in his official capacity as SECRETARY<br>OF THE INTERIOR,<br>1849 C Street N.W.<br>Washington, D.C. 20240; and<br><br>TARA SWEENEY, in her official<br>capacity as ASSISTANT SECRETARY<br>FOR INDIAN AFFAIRS,<br>1849 C Street N.W.<br>Washington, D.C. 20240,<br><br>       *Defendants*. | Civil Action No.__20-1581__ __ __<br><br>COMPLAINT |

**INTRODUCTION**

1.      The Cayuga Nation, a federally recognized Indian nation, brings this action against the United States of America, the United States Department of the Interior, the Secretary of the Interior (in his official capacity), and the Assistant Secretary for Indian Affairs (in her official capacity) to redress defendants' unlawful failure to issue a final decision on the Nation's application to accept title to certain land and hold it in trust for the Nation's benefit.

2.      The Nation's application has been pending before Interior for more than *fifteen years*, far longer than any other currently pending land-into-trust application.  During that time,

meanwhile, Interior has approved thousands of other similar applications.  Interior has also repeatedly told the Nation that the Nation's application is complete and that a decision would be made by a date certain—with the earliest of those dates being over a decade ago.  Yet despite the Nation's repeated requests for a decision on the application, and despite defendants' failure to identify any unmet requirements for a decision, defendants have refused to decide.  Indeed, defendants have recently informed the Nation that their consideration of the Nation's application has been suspended indefinitely.

3.    Defendants' delay in ruling on the Nation's application is unlawful, as federal law obligates defendants to make a decision "within a reasonable time," 5 U.S.C. §555(b).  And the delay is causing the Nation significant harm, impeding its ability to fully exercise its sovereignty, depriving its members of certain services, and forcing it to spend hundreds of thousands of dollars to comply with Interior's requirement to keep the application up to date.  These circumstances warrant judicial relief.

## JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. §1331 (because the Nation's claims arise under federal law), 28 U.S.C. §1361 (because this is an "action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"), and 28 U.S.C. §1362 (because this case is brought by an Indian tribe and arises under federal law).  The United States has waived its sovereign immunity for claims for non-monetary relief brought under each of the statutes sued upon here:  the Administrative Procedure Act, or APA, and 28 U.S.C. §1361.  *See* 5 U.S.C. §702.

5.    Venue is proper in this district both because three defendants (the Department of the Interior, Secretary Bernhardt, and Assistant Secretary Sweeney) reside in the district, and

because a substantial part of the events and omissions giving rise to the claim occurred in this district.  28 U.S.C. §1391(b), (e).

## PARTIES

6. The Cayuga Nation is a federally recognized sovereign Indian nation.  *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 81 Fed. Reg. 5019, 5020 (Jan. 29, 2016).  Its status as a sovereign nation predates the arrival of Europeans in North America, and its original territory was over three million acres.  In 1794, the Nation and the United States entered into the Treaty of Canandaigua, 7 Stat. 44, under which the United States confirmed lands reserved for the Nation under various New York State treaties.  The Nation's 64,015-acre reservation has continuously existed for over 200 years and exists to this day.

7. The United States of America is a sovereign nation.

8. The Department of the Interior is an executive department of the United States, *see* 5 U.S.C. §101, and an "agency" within the meaning of 5 U.S.C. §701.  Interior is responsible for the administration of programs related to the federal government's trust relationship with Indian nations, including the administration of the Indian Reorganization Act, or IRA, Pub. L. No. 73-383, 48 Stat. 984 (1934) (codified as amended at 25 U.S.C. §§461 *et seq.*).

9. The Honorable David L. Bernhardt is sued in his official capacity as Secretary of the Interior.

10. The Honorable Tara Sweeney is sued in her official capacity as Assistant Secretary for Indian Affairs.

## FACTUAL ALLEGATIONS

**The Nation And Its Application**

11.     As acknowledged in the Treaty of Canandaigua, *see* 7 Stat. at 45, the Cayuga

Nation's reservation is within the Nation's ancestral homelands, in what is now upstate New

York.  Although the Nation lost possession of those lands due to a series of illegal sales to the

State of New York in 1795 and 1807, it has since reacquired the lands through a series of open-

market purchases.

12.     On April 14, 2005, and May 25, 2005, the Nation made two submissions to

Interior, which together constituted an application for Interior to acquire in trust 129 acres of

land in Seneca and Cayuga Counties, New York, within the Nation's historic reservation.  These

lands, comprising six parcels, were sought for gaming and other purposes, pursuant to section 5

of the IRA and the Indian Gaming Regulatory Act, or IGRA, Pub. L. No. 100-497, 102 Stat.

2467 (1988) (codified at 25 U.S.C. §§2701 *et seq.*).

13.     The Nation submitted its application just weeks after the Supreme Court

recognized, in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), that

the IRA land-into-trust process provides a "proper avenue for [tribes, bands, and nations] to

reestablish sovereign authority over territory" taken away through the centuries, *id.* at 220.

14.     The Nation's application is critical to the Nation's self-governance goals, the

exercise of its tribal sovereignty, and the health and welfare of its members.  As Interior itself

recognized a decade ago, "[i]f the Nation's fee-to-trust application is approved by BIA, the

subject properties will be held … for the use and benefit of the Nation to ensure the cultural

preservation, expression and identity, self-determination, self-sufficiency and economic

independence of the Nation as a federally recognized Indian tribe."  U.S. Department of Interior,

Bureau of Indian Affairs ("BIA"), *Final Environmental Impact Statement: Conveyance of Lands*

- 3 -

*into Trust, Cayuga and Seneca Counties, New York* 1-3 (Aug. 2010), https://www.cayuganation trust.net/files/FEIS/FEIS/Cayuga_1.0_Purpose%20and%20Need.pdf.

**Interior's Unreasonable Delay In Processing The Nation's Application**

15.     Despite the application's obvious importance to the Nation, the significance of the land-into-trust process to tribal sovereignty generally, and Interior's responsibilities to the Nation as federal trustee, the Nation's land-into-trust application remains pending today, more than fifteen years after it was submitted.

16.     This delay is not on account of any failure by the Nation to supply Interior with requested information.  To the contrary, as detailed below, the Nation has consistently responded to all of Interior's requests regarding the application, providing Interior with all the information it has sought.

17.     The Nation's application is currently the longest-pending land-into-trust application.  And in just half of the time that the application has been pending (2009 to 2017), Interior "processed more than 2,265 [other] trust applications and restored more than 570,799 acres of land into trust."  BIA, *Interior Approves Craig Tribal Association's Land-into-Trust Application* (Jan. 13, 2017), https://www.bia.gov/as-ia/opa/online-press-release/interior-approves-craig-tribal-associations-land-trust-application.

18.     Defendants' delay since the Nation submitted its land-into-trust application to Interior in April and May 2005 included the following events:

19.     On October 17, 2006, the Nation, BIA, and Seneca and Cayuga Counties in New York executed a memorandum of understanding for the processing of the Nation's application, which called for Interior to issue a final decision by January 21, 2008.

20.     In August 2010, Interior completed its review of the application under the National Environmental Policy Act ("NEPA") and published its final Environmental Impact Statement ("EIS").  75 Fed. Reg. 65,372 (Oct. 22, 2010).  The EIS recommended taking the lands into trust, and indicated that a final decision would be issued soon after November 22, 2010.  *Id.* at 65,372.

21.     On December 7, 2010, members of Interior's Office of the Solicitor informed the Nation orally that there were no problems with the application and that the Nation could expect a final decision in 45 to 60 days.

22.     On May 4, 2011, Franklin Keel, Director of the BIA's Eastern Area Office, transmitted with his approval a draft "Record of Decision" on the application to the Assistant Secretary of Interior for Indian Affairs.  In a cover memorandum, he noted the Cayuga's "genuine need for trust land."

23.     In February 2012, the Nation was informed that the final decision had not been issued because of BIA's error in failing to submit the Nation's application for gaming eligibility to the Office of Indian Gaming.

24.     Throughout 2012, the Nation worked with the Office of Indian Gaming to provide further information regarding the application.  On August 13, 2012, the director of that office, Paula Hart, informed the Nation orally that her goal was to complete her office's review of the application by October 1 of that year.  The application then languished for the next five years, however, without any further action by Interior.

25.     On November 20, 2017, counsel for the Nation met with John Tahsuda III, the Principal Deputy Assistant Secretary for Indian Affairs, and James Cason, the Associate Deputy Secretary, to urge them to complete the review of the Nation's application in a

timely manner.  Mr. Cason acknowledged during the meeting that the Nation is entitled to a
timely decision.

26.    In February 2018, to analyze possible changes since the EIS was prepared, the
Nation submitted a "technical memorandum" with an updated evaluation of the environmental
conditions on the land that is the subject of the application.  The evaluation concluded that
"[t]here have been no substantial changes … or significant new circumstances or information
relevant to environmental concerns."  AKRF, Inc., *Cayuga Indian Nation of New York
Conveyance of Land Into Trust, Technical Memorandum* 2 (Feb. 9, 2018).

27.    On April 5, 2018, Interior solicited comments on the Nation's application
from state and local officials.  These comments—including attachments and exhibits—
amounted to less than 140 pages of material, yet it took Interior two months simply to
transmit them to the Nation (which made repeated requests during that period).

28.    On March 20, 2019, the Nation met with Assistant Secretary Sweeney to
discuss the application.  (The Nation initially requested the meeting seven months earlier.)
During the meeting, Ms. Sweeney committed that Interior would issue a final decision on
the application by September 30, 2019.

29.    Shortly before this meeting, Interior sent the Nation a letter (dated March 15,
2019) encouraging the removal of two parcels from the land addressed in the application.  Based
on that letter, and on discussion during the meeting with Assistant Secretary Sweeney, the
Nation agreed to remove the two parcels from its application, in order to facilitate Interior's
timely review.  This reduced the total area of land to be taken into trust to approximately 115
acres.  The Nation notified Interior that it had agreed to Interior's request in a letter dated the
same day as the meeting with Ms. Sweeney.

30.     The Nation met with Assistant Secretary Sweeney again on September 26, 2019.  During that meeting, it was made clear that no final decision was forthcoming on the application.  Interior gave no reason for the additional delay.

31.     In late October 2019, the Nation was informed that Assistant Secretary Sweeney and the Solicitor of the Interior had completed their review of a draft final decision but that officials in Interior's "NEPA Review Team" needed to review and approve the decision.

32.     The NEPA Review Team process was established by Secretarial Order No. 3355, *Streamlining National Environmental Policy Act Reviews and Implementation of Executive Order 13807* (Aug. 31, 2017).  Reviews by that team typically conclude within approximately three days, but for reasons Interior has not explained, the Nation's application has been under consideration by this team for more than seven months.

33.     The Nation's attempts to obtain information about the NEPA Review Team's review, including a November 21, 2019, formal request to meet with Associate Deputy Secretary Cason, have been met with silence.

34.     On January 8, 2020, counsel for the Nation was informed by Interior that work on the application had been suspended indefinitely due to resource constraints.

35.     Since then, however, Interior has continued work on other land-into-trust matters, including granting two applications that were each submitted over a *decade* after the Nation's application.  *See* BIA, *Indian Affairs Announces Two Historic Decisions Taking Into Trust Tribal Lands Under New Guidance* (Mar. 13, 2020), https://www.bia.gov/as-ia/opa/online-press-release/indian-affairs-announces-two-historic-decisions-taking-trust-tribal (describing Interior's

final decisions on land-into-trust applications submitted in 2017 and 2018, as well as Interior's

March 2020 M-Opinion guiding eligibility considerations).

36.     In April 2020, the Nation's counsel made multiple attempts to schedule a

teleconference with Interior officials to discuss the Nation's application.  Interior disregarded the

Nation's requests for a meeting.

37.     Other than the removal of two parcels of land from the application (done, as

noted, at Interior's urging, and to facilitate Interior's timely review), there have been no

changes to the application since completion of Interior's NEPA analysis in 2010, which the

Solicitor's Office deemed adequate.

**Harm The Nation Has Suffered From Interior's Delay**

38.     Interior's delay in ruling on the Nation's application has prejudiced the Nation, in

several ways.

39.     First, the delay has hindered the Nation's ability to fully exercise its tribal

sovereignty.  Indeed, during the fifteen years the application has been pending, the Nation's

attempts to exercise self-governance have been met repeatedly with claims that the Nation

cannot take critical actions because its land is not in trust.  These claims have targeted matters at

the core of the Nation's sovereignty.

40.     For example, the Village of Union Springs has claimed that the Nation may not

conduct Class II gaming under the IGRA because its lands are not in trust.  *See Cayuga Nation v.*

*Tanner*, 2020 WL 1434157, at \*19 (N.D.N.Y. Mar. 24, 2020).  While that claim has been

rejected by a district court in New York, *see id.* at \*23, the village has appealed to the Second

Circuit.

- 8 -

41.     Similarly, the Nation has recently established its own police force, consistent with Interior's recognition that the "Nation may enforce its own criminal laws against Indians within the boundaries of the [Cayuga] Reservation."  Letter from Darryl LaCounte, Acting Director of the Bureau of Indian Affairs, to Stuart Peenstra, Seneca Falls Police Chief at 1 (June 17, 2019), http://cayuganation-nsn.gov/uploads/1/0/7/9/107953845/nation_doi_june_17_2019_ltr_to_peens tra.pdf.  But officials of other governments in the area have raised questions about the jurisdiction of the Nation's police force over lands that are not in trust.

42.     And likewise, Seneca County attempted to foreclose on the Nation's properties located on the land subject to the application, arguing that because the land was not held in trust, the Nation was obligated to pay taxes and was not protected by tribal sovereign immunity. Although the courts rejected that effort, *see Cayuga Indian Nation of New York v. Seneca County, New York*, 761 F.3d 218 (2d Cir. 2014), the Nation has incurred hundreds of thousands of dollars in costs related to all these—and other—challenges, many if not most of which could have been avoided if Interior had adhered to its trust responsibilities and issued a timely decision on the Nation's application.

43.     Second, the delay has prevented the Nation from gaining access to the federal programs available to all other federally recognized tribes that hold trust land.  These programs are critical to ensuring the safety and health of tribal members.

44.     Third, Interior's delay has denied the Nation the jurisdictional and tax benefits that trust status would bring for the Nation's several small businesses, which remain the Nation's primary source of revenue.  The revenue the Nation receives from these businesses—including one gas station, a convenience store, and the Class II gaming facility referred to above—will be

enhanced when they are operating on trust land, thereby providing more significant benefits for the health and welfare of the Nation's members.

45.     Fourth, Interior's delay has forced the Nation to spend more than $200,000 keeping its application current.  Interior's "manual" governing land-into-trust applications provides that environmental analyses—known as a Phase I Environmental Site Assessments, or ESAs—must be completed for the subject land not more than 180 days before the date when the land is taken into trust.  *See* U.S. Department of the Interior Departmental Manual, 602 DM 2, §2.8(C) (eff. Oct. 12, 2016), https://www.ntc.blm.gov/krc/uploads/984/01%20602%20DM% 202%20TRS%20and%20Chapter.pdf.  Interior first asked the Nation to submit ESAs in 2009, with the understanding that a decision on the application was imminent.  The Nation complied, but Interior failed to act.  And since then, the Nation has updated the ESA three times—most recently on January 7, 2020—each time after Interior has indicated that a decision on the application was imminent.  Each time, however, Interior has again sat on the Nation's application for an additional six months, rendering the ESA outdated.  These updates have cost the Nation more than $150,000.  The Nation has also spent an additional $40,000 to update non-ESA environmental documentation that likewise became stale due to Interior's delay.  The Nation has thus needlessly lost hundreds of thousands of dollars, money that could have been used to improve the health and welfare of the Nation's members.  And on July 5, 2020, the latest ESA will likewise become outdated.

*          *          *

46.     There is no sound justification for defendants' refusal to issue a final decision on the Nation's application or to even provide a timeline for issuance of such a decision. Defendants' conduct is particularly egregious in light of their trust responsibilities to the Nation.

**CLAIMS FOR RELIEF**

**Count One: Unreasonable Delay and Action Unlawfully Withheld And Unreasonably Delayed Under the Administrative Procedure Act, 5 U.S.C. §555(b)**

47.     Paragraphs 1 through 46 of this complaint are incorporated by reference as if fully set forth herein.

48.     The APA imposes a non-discretionary duty on defendants to conclude matters presented to them "within a reasonable time," 5 U.S.C. §555(b), and it empowers this Court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* §706(1).  Defendants' delay of over fifteen years in making a decision on the Nation's land-into-trust application is an unlawful withholding and unreasonable delaying of action required by law within the meaning of the APA.

49.     Interior Department policy requires that once a land-into-trust application is complete, "BIA staff will take the necessary actions to assure that a Notice of Decision is issued as soon as possible, but no later than 15 days from the date of receipt of final document(s) required to issue the Notice of Decision."  BIA, *Indian Affairs Manual* Part 52 Ch. 12 §1.3(C)(2) (2010).  The federal government's trust responsibility to the Nation—which imposes the most exacting fiduciary standards on the United States—requires that defendants comply with Interior's policies, such as the *Indian Affairs Manual*, even if that policy is more stringent than the applicable regulations.

50.     The IRA's land-into-trust process is a fundamental mechanism by which the federal government may promote tribal sovereignty.  *See City of Sherrill*, 544 U.S. at 220. Defendants' fifteen-year neglect of the application has impeded the Nation's self-governance, hampered the Nation's ability to provide for the health and welfare of its members, and cost the Nation hundreds of thousands of dollars in litigation and environmental-consultant fees.

51.     Any claim of resource limitations could not justify defendants' delay, particularly given (1) Interior's repeated statements since 2010 that it was on the cusp of issuing a decision, (2) the fact that no further action appears to be necessary to issue a decision on the Nation's application, (3) Interior's action on thousands of trust applications that have been pending for less time, and (4) Interior's recent actions on other applications.

52.     Pursuant to 5 U.S.C. §706(1), the Nation is therefore entitled to judgment that defendants' failure to issue a final decision on the Nation's application is unlawful, and further entitled to injunctive relief compelling defendant to immediately issue such a decision.

## Count Two: Mandamus Under 28 U.S.C. §1361

53.     Paragraphs 1 through 52 of this complaint are incorporated by reference as if fully set forth herein.

54.     The APA, the IRA and its implementing regulations, and Interior Department guidance impose a mandatory obligation on the Secretary to review the Nation's application and issue a decision on it within a reasonable time.

55.     Defendants have failed, despite repeated requests, to issue a final decision on the Nation's application.  Nor have defendants provided any indication of when they intend to issue such a decision.

56.     Defendants' unreasonable delay in issuing a final decision on the Nation's application severely prejudices the Nation's interests and has a direct impact on the Nation's health and welfare.

57.     There is no other adequate remedy available to the Nation.

58.    Accordingly, pursuant to 28 U.S.C. §1361, the Nation is entitled to a writ of mandamus to compel defendants to immediately issue a final decision on the Nation's application.

## PRAYER FOR RELIEF

**WHEREFORE,** the Nation prays that the Court:

59.    Enter an order directing defendants immediately to issue a final decision on the Nation's land-into-trust application;

60.    Award the Nation reasonable costs and attorneys' fees; and

61.    Award such other relief, legal or equitable, as this Court may deem just and proper.


Dated:  June 16, 2020                          Respectfully submitted,

                                               /s/ Daniel S. Volchok
                                               Daniel S. Volchok (D.C. Bar No. 497341)
                                               WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                               1875 Pennsylvania Avenue N.W.
                                               Washington, D.C. 20006
                                               Tel.: (202) 663-6000
                                               Fax: (202) 663-6363
                                               daniel.volchok@wilmerhale.com


                                               Michael Connor (D.C. Bar No. 1531875, pro
                                                 hac vice motion pending)
                                               WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                               1225 Seventeenth Street
                                               Suite 2600
                                               Denver, Colorado 80202
                                               Tel.: (720) 598-3402
                                               Fax: (720) 274-3133
                                               michael.connor@wilmerhale.com